CHICAGO TRANSIT AUTHORITY, Plaintiff-Appellant, *v.* YELLOW CAB COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—1164

Opinion filed March 22, 1984.—Rehearing denied May 24, 1984.

John O. DeMaret, of Chicago (William G. Clark, Jr., and Ilene Davidson Johnson, of counsel), for appellant.

Jesmer and Harris, of Chicago (Lawrence P. Seiwert and Charles E. Tannen, of counsel), for appellee Yellow Cab Co.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Chicago Transit Authority (CTA) appeals from an order of the trial court dismissing plaintiff's suit to recover workers' compensation benefits paid to one of its employees as the result of injuries the employee sustained in a collision between a CTA bus driven by the employee and a Yellow Cab driven by co-defendant Yaacov Yaisch. Defendants had filed a motion to dismiss the complaint, alleging as an affirmative defense a release previously executed by the CTA. The trial court initially denied the motion but then granted a motion for reconsideration and dismissed the suit. On appeal the CTA contends (1) the scope of the release was limited to the claim for property damage resulting from the repair of the CTA's vehicle; (2) the release should be set aside due to a mutual mistake of the parties concerning its scope; (3) plaintiff's affidavits raised a material issue of fact concerning the intentions of the parties and therefore defendants' motion to dismiss should not have been granted.

We reverse and remand for further proceedings.

On December 6, 1979, a CTA bus driven by CTA employee Alexander Sparks was involved in a collision with a taxicab owned by defendant Yellow Cab and operated by co-defendant Yaacov Yaisch. The bus was subsequently repaired for $239.12. Two reports of employee injury from the CTA's files dated December 6, 1979, and De-

cember 7, 1979, indicate that the driver of the bus complained of a head injury. A workers' compensation claims file for Sparks was opened in December 1979 and medical reports were sent to the CTA's workers' compensation insurer on December 26, 1979, and January 28, 1980. Copies of all of these documents relating to the CTA employee's injuries were attached to an affidavit filed by Yellow Cab in support of defendants' motion to dismiss. The affidavit stated that the documents were correct copies of records received from the CTA during pretrial discovery.

On February 21, 1980, the CTA executed the following release:

"FULL RELEASE AND SETTLEMENT

I, Chicago Transit Authority residing at _____ for and in consideration of the sum of Two Hundred Thirty-Nine and 12/100 ($239.12) Dollars, lawful money of the United States to me, in hand paid by YELLOW CAB COMPANY receipt whereof is hereby acknowledged, and by these presents do for myself, heirs, executors, administrators, remise, release and forever discharge the said party above named, its officers, agents, employees, successors and assigns of and from all, and all manner of action, and actions, cause and causes of actions, suits, contracts, agreements, promises, damages, claims and demands whatsoever in law or equity, which against the said party above named I ever had, now have, or hereafter may have or which my heirs, executors or administrators, hereafter can, shall or may have, for upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these Presents.

This release is made with an understanding of the nature of the injuries and of the possibility of injuries existing which may or may not be known to either party at this time and of any injuries or ailments that hereafter may develop; and contains the entire agreement and no verbal representations or promises have been made."

The document was signed by Marge Conway, a CTA claims adjuster. At the bottom of the document is the typewritten notation "S. Bowie # 7912 Y 0054." In one of the hearings below defendants' counsel stipulated to the court that Bowie was the name of the claims adjuster who negotiated the settlement with the CTA, "7912" referred to the year and month of the accident, "Y" referred to Yellow, and the four-digit figure "0054" indicated that it was a property damage matter. A personal injury matter would have been represented by a three-digit code.

The parties stipulated to the following facts. In consideration for the CTA's execution of the release defendant Yellow Cab gave the CTA a check for $239.12, stating on its face "For all claims against Yellow Cab Company and its agents" and "7912 Y 0054." Attached to the check was a rider stating "Pd losses paid" and "7912 Y 0054." The total amount of property damage claimed by the CTA in the accident of December 6, 1979, was $239.12 and prior to the execution of the release this represented the only claim presented to Yellow Cab for injury arising out of that accident. "7912 Y 0054" was the designation of the Yellow Cab claim file for the accident occurring on December 6, 1979, involving a vehicle owned and operated by the CTA.

In opposition to the defendants' motion to dismiss, the CTA filed the affidavits of two of its employees involved in the negotiation and execution of the release. In her affidavit Marge Conway stated that she was the CTA claims adjuster responsible for handling the property damage adjustment for the CTA resulting from the accident. At the time she executed the release she contemplated releasing only the property damage claim of the CTA, which was for the $239.12 expended to repair the bus, and no other claims or actions stemming from that accident. In the second affidavit James M. Hickey stated that he was the CTA claims adjuster who negotiated the CTA property damage claims arising out of collisions between CTA vehicles and Yellow Cab vehicles. He had customarily, regularly, and without exception negotiated these property damage claims with Yellow Cab claims adjuster Sylvester Bowie. In over 100 claims negotiated with Bowie only property damage claims were discussed, Hickey had never agreed to give up any rights or claims for injuries or damages other than property damage, and neither Bowie nor any other Yellow Cab agent had ever informed him that any release executed pursuant to their negotiations was applicable to any claim other than property damage claims. Hickey also stated that he had negotiated the property damage claim at issue with Bowie. Pursuant to regular practice the release and other documents were then executed by Marge Conway.

The CTA filed this complaint on December 1, 1981, seeking recovery of payments made to its employee, Alexander Sparks, in the amount of $7,794.95. That amount, paid as compensation under the provisions of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*), allegedly included compensation for 45 days of temporary total disability from December 6, 1979, to January 20, 1980. Defendants' motion to dismiss was ultimately granted by the trial court on May 3, 1983, and plaintiff brought this appeal.

I

■ We find that plaintiff's first contention, that the scope of the release was limited to any claims for property damage arising out of the accident, is dispositive of this appeal. It is well settled under Illinois law that when an instrument contains recitals of or other references to specific claims and also contains words of general release, the words of general release are to be limited to the particular claim to which specific reference has been made. (*Todd v. Mitchell* (1897), 168 Ill. 199, 48 N.E. 35; *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430; *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 442 N.E.2d 1362.) In *Gladinus* plaintiff had suffered personal injuries and damage to her vehicle in an automobile collision with the defendant. Defendant's insurance company had issued to the plaintiff a check in an amount representing the amount of damage to plaintiff's vehicle. On the back of a check was a general release reciting that by endorsing the check plaintiff agreed to release and discharge all claims against the insurance company and its insured. Plaintiff's subsequent suit for personal injuries against the defendant was dismissed by the trial court on the basis of this release. In reversing that order the appellate court noted that the face of the check bore a coded reference which testimony had established referred only to property damage and not to personal injury. A different code would have been used for personal injury. The court held that the reference to property damage on the face of the check limited the general release on the back to claims for property damage arising out of the accident in question.

■ In this cause the release in question also contains language which purports to establish a general release. Indeed as defendants note on appeal in *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 442 N.E.2d 546, this court construed virtually identical language in a release as having been intended to settle all claims arising from an accident. But the critical distinction between that case and this cause is that here we are presented with additional, limiting language on the face of the release. It is undisputed that the four-digit code contained in this additional notation referred to a property damage claim; a three-digit code would have been used to refer to a personal injury claim. Accordingly, we find that the words of general release contained in the document at issue were limited by the specific reference to a property damage claim. Thus, the release pertained only to any subsequent property damage claims arising out of the accident and did not bar plaintiff's cause of action.

## II, III

As independent bases for reversal plaintiff has also contended that the affidavits it filed in the trial court either established that the parties were mutually mistaken as to the scope of the release or at least raised a material issue of fact as to that issue. But an examination of those affidavits, which we have summarized, establishes that they related only to the plaintiff's intentions with respect to the scope of the release. In essence James Hickey and Marge Conway averred only that they had never contemplated that the release would relate to any claim other than a property damage claim. But the fact of a unilateral mistake is insufficient to invalidate a release which is clear on its face. (*Rakowski v. Lucente* (1983), 120 Ill. App. 3d 715; *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Thus, in *Rakowski* this court held that a general release was valid despite the sworn affidavit of one of the parties that he had never contemplated releasing the other party from liability for a contribution action. In this cause, because plaintiff's affidavits at best established only a unilateral mistake as to the scope of the release, we find that those affidavits do not establish an independent basis for reversal of the trial court's order.

The order of the trial court is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.