*In re* ESTATE OF NICHOLAS J. CONSTANTINE, Deceased (Frank Pollack *et al.*, Claimants and Third-Party Plaintiffs-Appellants; Estate of Nicholas J. Constantine, Respondent (Lurie Company, Third-Party Defendant-Appellee)).

First District (4th Division)    No. 1—98—2178

Opinion filed May 20, 1999.

---

Levin, McParland, Phillips & Minetz, LLC, of Chicago (Robert S. Minetz and James J. Legner, of counsel), for appellants.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Kurt J. Heinz, and Patti S. Levinson, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The question: When is a document entitled "Release" not a release?

Our answer: When the people who sign it intend it to be something else.

In this case, the trial court determined the "Release And Settlement Agreement" was intended by the signators to be a covenant not to sue. We agree, and we affirm the trial court's grant of summary judgment.

## FACTS

This appeal centers around three leases. The Lurie Company (Lurie) is the lessor. The lessees are plaintiffs Frank Pollack and Byron Weis, partners in the law firm of Pollack and Weis, and Nicholas J. Constantine, now deceased. Though Constantine was an attorney, he was not a member of the Pollack and Weis firm.

Pollack, Weis, and Constantine, as joint and several tenants, leased suite 2900 (lease No. 1) in the American National Bank Building; storeroom S/B 15A (lease No. 2); and storeroom 2360 (lease No. 3). Leases No. 1 and No. 2 ran from January 1, 1993, to December 31, 2002, while lease No. 3 ran from May 1, 1993, through December 31, 2002. Based on the square footage of the space occupied, Constantine was required to pay Pollack and Weis, 23.2% of the total rent due (about $1,650 per month). Pollack and Weis then sent a single check to Lurie.

Constantine died on December 30, 1995. Constantine's estate (the Estate) continued to pay Constantine's share of the rent through September 1996. However, by October 1, 1996, the Estate relinquished the leased space and stopped making rent payments to Pollack and Weis.

On October 1, 1996, Lurie, at the urging of Pollack and Weis, filed a contingent claim against the Estate. Though there had never been a default on the leases, the claim was made to settle the issue of the Estate's potential liability under the leases.

On October 2, 1996, Pollack and Weis filed their claim against the Estate, seeking the balance of Constantine's rent obligation under the lease.

On October 28, the court issued an agreed order based on a settlement reached between Lurie and the Estate. The order was amended on November 13, 1996, *nunc pro tunc*, and states in pertinent part:

"It is hereby ordered that The Lurie Company claim in the amount of $7,500 is hereby allowed as a Class 7 claim in full satisfaction and release of the liability of the Estate of Nicholas J. Constantine, only, under the subject lease and all matters set forth in the claim, with it being specifically provided that this order does not cause the liability of Frank S. Pollack and Byron H. Weis under the lease and for matters set forth on the claim to be released."

In conjunction with this agreed order, Lurie, through its property manager, Fern Jaffe, signed a release agreement at the request of the Estate's attorney. The release agreement states:

"In consideration of the allowance of a claim against the Releasee in the sum of SEVEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($7,500), the receipt and sufficiency of which are hereby acknowledged, Releasor releases, remises, and forever discharges Releasee and its beneficiaries and representatives from any and all claims, actions, causes of action, suits, judgments, damages, debts, obligations, and demands of any nature, present and future, known or unknown, arising since the beginning of time and up to and including the date of these presents, and particularly, but without limiting this general release, on account of all rent, damages, and penalties arising out of or related to the Lease dated December 16, 1992, and all matters raised in the Probate Claim filed by Releasor and Releasee."

On March 12, 1997, Pollack and Weis amended their claim against the Estate to add a third-party claim against Lurie. In this third-party complaint, Pollack and Weis alleged the release agreement signed by Lurie, being a general release given to Constantine's Estate, acted to release Pollack and Weis, as co-obligors under the lease, from any obligation to pay Constantine's share of the rent obligation for the

remainder of the lease period. Pollack and Weis requested a declaration that their obligation to pay Constantine's share had been released. They also requested a refund of any monies paid to Lurie for Constantine's rent share since the date the release was signed.

On March 19, 1997, Jaffe sent a letter to the Estate, revoking the release agreement. Though the Estate tendered payment of the $7,500 to Lurie on December 30, 1977, Lurie's attorney notified the Estate that the payment was refused.

With regard to the third-party complaint, however, Lurie moved for summary judgment, alleging there never was an intent to release any parties other than Constantine's Estate from liability under the lease. The trial court granted Lurie's motion on June 1, 1998. This appeal followed. We affirm.

## DECISION

The sole issue before this court is whether the trial court properly granted Lurie Company's motion for summary judgment.

■ Summary judgment is to be granted when the pleadings, depositions, exhibits, and affidavits on file reveal no genuine issue of material fact and establish that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1994). All evidence must be construed in the light most favorable to the nonmoving party and most strictly against the moving party. *Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990). Because summary judgment is a drastic remedy, it will be granted only if the right of the moving party is clear and free from doubt. *Pyne v. Witmer*, 159 Ill. App. 3d 254, 512 N.E.2d 993 (1987). Review of orders granting summary judgment motions is *de novo*. *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 703 N.E.2d 71 (1998).

Pollack and Weis do not dispute the facts. They contend the trial court erred when it determined, as a matter of law, that the release agreement signed by Lurie was not a general release which operated to negate the obligation of Pollack and Weis to pay Constantine's share under the leases.

We find, however, the trial court correctly interpreted the "Release and Settlement Agreement" as a covenant not to sue.

The Lurie Company signed the release shortly after the trial court issued its order settling the contingent claim Lurie filed against the Estate. The release made reference to the contingent claim and thereby incorporated the terms of the settlement order. That was the purpose of the release—to reflect the agreed order. It bears repeating—this was a settlement of a contingent claim against the Estate, not a claim for rent due. It had nothing to do with any right or obligation of Pollack and Weis. There was no reason to release them.

To be more complete, the release should have repeated the language contained in the amended order, which made it clear the $7,500 settlement was in exchange for a release of Constantine's Estate *only* and did not affect Lurie's rights against Pollack and Weis under the lease agreements. Nevertheless, we will not allow Pollack and Weis to make more out of this obvious oversight than it is worth.

There can be no question that the $7,500 settlement between Lurie and the Estate was intended to be a release of the Estate from any future obligations under the lease so that Constantine's estate could be closed. Under these circumstances, the release agreement, despite its title, was intended to be a covenant not to sue.

Pollack and Weis rely almost exclusively on *Porter v. Ford Motor Co.*, 96 Ill. 2d 190, 449 N.E.2d 827 (1983), for their position that a general release must be enforced as written, regardless of the parties' intent. But, in *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 560 N.E.2d 315 (1990), the court, after acknowledging the strict interpretation of the law in *Ford*, decided that an agreement, which was captioned "RELEASE OF ALL CLAIMS," was a covenant not to sue, based on the circumstances surrounding its execution. The supreme court said, as we say here: "In interpreting a contract, we look to the circumstances to determine the parties' intentions." *Batteast*, 137 Ill. 2d at 183. Because *Batteast* tells us the "circumstances surrounding its execution" are to be considered, the parol evidence rule is not a matter for further concern in this case. *Batteast*, 137 Ill. 2d at 182.

When we consider the surrounding circumstances we do not change the terms of the release or create an ambiguity where none exists. See *Air Safety v. Teachers Realty Corp.*, 185 Ill. 2d 457, 706 N.E.2d 882 (1999). Instead, we consider the circumstances surrounding execution of the document as part of the agreement, reflecting the clear intent of the signators. We believe that is what the supreme court did in *Batteast*.

We recognize *Batteast* is not a summary judgment case. But the release versus covenant issue was raised after trial by Wyeth's motion to dismiss plaintiff's complaint and vacate judgments entered on that complaint. See *Batteast v. Wyeth Laboratories, Inc.*, 172 Ill. App. 3d 114, 138-39, 526 N.E.2d 428 (1988). It follows that the issue was decided as a matter of law, as we decide the issue in this case.

Two factors considered by the court in *Batteast* when reaching its decision were: (1) the nature of the party being granted the release, and (2) the amount of the settlement. The plaintiffs, in the midst of a trial with other alleged tortfeasors, gave a release to a doctor who had played a minor role in the care of the injured minor. The release was given in exchange for a settlement amount of only $35,000. The court

called this amount "insignificant" in relation to the plaintiffs' medical costs already incurred and the potential future expenses.

■ In the present case, the release agreement was signed by Lurie after the court approved a settlement amount of $7,500 on Lurie's contingent claim filed in probate against Constantine's estate. Constantine's share of the rent under the three leases was calculated to be about $1,650 per month and almost seven years remained on the lease term. Under these circumstances, the $7,500 settlement is an "insignificant" amount and clearly not intended to provide Lurie with full compensation.

Furthermore, the release agreement does not state it is in full "satisfaction" and settlement of all the lease agreements. See *Porter*, 96 Ill. 2d at 196. The release, in addition to making indirect reference to the court order which clearly stated the settlement was with Constantine's Estate *only*, repeatedly stated it was a settlement between the releasor and the releasee. Pollack and Weis were not parties to the release. There is no reason why they should have been.

## CONCLUSION

Under the circumstances, we see no basis for finding Lurie, by executing the release agreement with the Estate, granted Pollack and Weis a release from all future payment of Constantine's share of the rent under the three leases. The trial court's grant of summary judgment to Lurie on the third-party complaint is affirmed.

Affirmed.

SOUTH, P.J., and HALL, J., concur.