NOTICE

Decision filed 07/12/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0447

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| FARMERS AUTOMOBILE INSURANCE ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05-MR-95 |
| LINDA S. KRAEMER, | ) ) ) | Honorable Richard A. Aguirre, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Farmers Automobile Insurance Association (Farmers), filed its complaint for a declaratory judgment in the circuit court of St. Clair County, seeking a declaration that it was not required to pay underinsured-motorist-coverage benefits to the defendant, Linda S. Kraemer. The circuit court construed a release that Kraemer had executed, determined that she did not intend to release Farmers, and entered a judgment in her favor. On appeal, Farmers contends that the release Kraemer executed discharged Farmers from its obligation to pay her underinsured-motorist-coverage benefits.

We affirm.

FACTS

Farmers issued its policy of insurance to Kraemer and her husband as named insureds. The policy provided for automobile liability insurance on a primary basis and included underinsured-motorist coverage, with an effective policy period of November 16, 2002, to May 16, 2003, and coverage limits of $100,000 for each person and $300,000 for each

1

occurrence.  On January 10, 2003, Kraemer sustained injuries in a motor vehicle accident caused by Rudy Teason.  Following the accident, Allstate Insurance Company (Allstate), on behalf of Teason, its named insured, offered to Kraemer its policy limit of $25,000 in exchange for a release memorializing the case's settlement.  Kraemer accepted the $25,000 offered by Allstate, and on December 20, 2004, Kraemer and her husband executed the following release:

"This Indenture Witnesseth that we[,] in consideration of the sum of Twenty[-]Five Thousand & 00/100 dollars ($25,000.00), receipt whereof is hereby acknowledged, do hereby for our heirs, personal representatives[,] and assign[s][] release and forever discharge Rudy Teason and any other person, firm[,] or corporation charged or chargeable with responsibility of liability, [and] their heirs, representative[,] or assigns, form [*sic*] any and all claims, demands, damages, costs, expenses, loss of service, action[,] and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, bodily injury, disability, property damage, loss[,] or damage of any kind sustained or that we may hereafter sustain in consequence of an accident that occurred on or about the 10th day of January, 2003, at or near North Main Street, Dupo, IL.

* * *

We, each of the undersigned, further understand that such liability as we may or shall have incurred, directly or indirectly, in connection with or for damages arising out of the accident to each person or organization, release and discharge of liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged[,] nor [*sic*] settled by this release."

On March 21, 2005, Farmers filed its complaint for a declaratory judgment.  Farmers

2

requested that the circuit court declare, pursuant to the release, that it was not liable under its policy of insurance to provide underinsured-motorist-coverage benefits to Kraemer for the injuries she had received in the January 10, 2003, motor vehicle occurrence. On May 6, 2005, Farmers filed a motion for a judgment on the pleadings. See 735 ILCS 5/2-615(e) (West 2004). On July 20, 2005, after hearing arguments, the circuit court held that the parties to the release did not intend to release Kraemer's underinsured-motorist claim against Farmers. On August 3, 2005, Farmers filed a notice of appeal.

ANALYSIS

Farmers argues that the release discharged its duty to pay underinsured-motorist-coverage benefits to Kraemer.

"Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001). "In ruling on a motion for judgment on the pleadings, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered." *M.A.K.*, 198 Ill. 2d at 255.

"A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts." *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951 (1990). Where a court determines that a contract is ambiguous as a matter of law, its construction becomes a question of fact, and parol evidence is admissible to ascertain the parties' intent. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). A contract is ambiguous if it is capable of being understood in more than one sense. *Farm Credit Bank of St. Louis*, 144 Ill. 2d at 447.

General words of release are restrained in effect by the specific recitals contained in

3

the instrument. *Carona*, 203 Ill. App. 3d at 951; *Gladinus v. Laughlin*, 51 Ill. App. 3d 694, 696 (1977); *Kerr v. Schrempp*, 325 Ill. App. 614, 619 (1945). When a release recites general words that follow particular words, the general words are limited to things or persons of the same kind or class as those which are particularly mentioned. *Gage v. Cameron*, 212 Ill. 146, 157 (1904). Illinois courts restrict the language of a general release to the things or persons intended to be released and refuse to interpret generalities to defeat a valid claim not then in the minds of the parties. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (2003); *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 762 (2000); *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 839 (1995); *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center*, 137 Ill. App. 3d 294, 304 (1985); *Gladinus*, 51 Ill. App. 3d at 696.

The scope and effect of a release are controlled by the intention of the parties. *Carlile*, 271 Ill. App. 3d at 838. Particularly with a release, this intent " 'is discerned from the language used *and the circumstances of the transaction*.' " (Emphasis in original.) *Carlile*, 271 Ill. App. 3d at 838 (quoting *Carona*, 203 Ill. App. 3d at 951); see also *First Bank & Trust Co. of Illinois v. Village of Orland Hills*, 338 Ill. App. 3d 35, 46 (2003); *In re Estate of Constantine*, 305 Ill. App. 3d 256, 260 (1999); *Gladinus*, 51 Ill. App. 3d at 696. When considering the circumstances surrounding the execution of a release, we do not change the terms of the agreement or create an ambiguity where none exists. *First Bank & Trust Co. of Illinois*, 338 Ill. App. 3d at 46; *In re Estate of Constantine*, 305 Ill. App. 3d at 260. Instead, we consider the circumstances surrounding the document's execution as a part of the agreement, reflecting the clear intent of the signators. *First Bank & Trust Co. of Illinois*, 338 Ill. App. 3d at 46; *In re Estate of Constantine*, 305 Ill. App. 3d at 260. No form of words, no matter how all-encompassing, will foreclose a court's scrutiny of a release or prevent a reviewing court from inquiring into the surrounding circumstances to ascertain whether it accurately reflected the parties' intention. *Carlile*, 271 Ill. App. 3d at 839 (courts are

4

reluctant to apply the parol evidence rule to a release and instead consider the circumstances of the release transaction to determine the parties' intention). A release will not "be construed to include claims not within the contemplation of the parties." *Carlile*, 271 Ill. App. 3d at 838.

Farmers relies on *Martin*, 318 Ill. App. 3d 751, to support its argument that the release discharged Farmers' contractual obligation to pay underinsured-motorist-coverage benefits. In *Martin*, the plaintiff's husband was killed while riding as a passenger in a vehicle driven by his father, who had liability insurance with the defendant Illinois Farmers Insurance Company. *Martin*, 318 Ill. App. 3d at 754. Following the accident, the defendant tendered to the plaintiff its policy limit of liability, and the plaintiff executed a release " 'discharg[ing] [her husband's father], his principals, agents, representatives[,] and insurance carriers from any and all rights, claims, demands, and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to personal injuries, death[,] or property damage[] arising from [the] accident.' " *Martin*, 318 Ill. App. 3d at 756. The plaintiff claimed that the defendant was still obligated to pay $100,000 in underinsured-motorist-coverage benefits. *Martin*, 318 Ill. App. 3d at 756. The First District Appellate Court held that the underinsured-motorist claim was within the scope of the language of the release. *Martin*, 318 Ill. App. 3d at 762.

The First District's decision in *Martin* is not dispositive of the present case. The release in *Martin* stated that the plaintiff had released and forever discharged her husband's father (the driver of the vehicle) and "his *** insurance carriers." *Martin*, 318 Ill. App. 3d at 756. The plaintiff sought underinsured-motorist-coverage benefits from the defendant as the driver's insurance carrier, with whom she had executed the release. *Martin*, 318 Ill. App. 3d at 761. Here, Kraemer does not argue that she is entitled to additional underinsured-motorist-coverage benefits from Allstate, with whom she executed the release. Instead, she seeks

5

underinsured-motorist-coverage benefits from Farmers, her insurance carrier, who was not a party to the release.

We follow our own reasoning in *Gladinus*, 51 Ill. App. 3d at 696. In *Gladinus*, this court held that a reference to property damage in the code on the face of a check effectively limited the general release language on the back of the check to claims for property damage arising out of the accident. *Gladinus*, 51 Ill. App. 3d at 696. This court rejected the all-inclusive effect of the release, on the basis that the parties' intention controls the scope and effect of the release and that "such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction." *Gladinus*, 51 Ill. App. 3d at 696. Considering that the check amount was the exact amount of the property damage estimate and that the full extent of the plaintiff's personal injuries was unknown when the check was issued and endorsed, those undisputed facts permitted no conclusion other than that the parties intended to release only those claims relating to property damage, not the plaintiff's action for personal injuries. *Gladinus*, 51 Ill. App. 3d at 697.

In the present case, the release stated that, in receipt of $25,000, Kraemer "discharge[d] Rudy Teason and any other person, firm[,] or corporation charged or chargeable with responsibility of liability, [and] their heirs, representative[,] or assigns." The words "any other *** corporation charged or chargeable with responsibility of liability" are general words limited by the specific identification of the tortfeasor, Teason. See *Gladinus*, 51 Ill. App. 3d at 696. The release is therefore ambiguous regarding whether Farmers, who was not a party to the release and who was not Teason's insurer, was a corporation chargeable with Teason's tortious liability and thereby released from its contractual liability to Kraemer pursuant to its policy of insurance issued to her.

When we consider the surrounding circumstances, we find that the parties clearly did not intend to discharge Farmers' obligation to pay underinsured-motorist-coverage benefits to

6

Kraemer. See *Carona*, 203 Ill. App. 3d at 951. Kraemer accepted $25,000, Allstate's policy limit of liability pursuant to its agreement with Teason, in exchange for signing Allstate's release form that explicitly released Teason. Farmers was not a party to the release and gave no consideration for the release. Farmers' liability for underinsured-motorist-coverage benefits was a contractual obligation pursuant to its policy with Kraemer, and Kraemer paid premiums to Farmers for the underinsured-motorist coverage. See *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 278 (1992) (when a premium is paid for uninsured-motorist protection and the protection is not there, the policyholder has been denied substantial economic value in return for the premiums paid). If Farmers, who had accepted Kraemer's underinsured-motorist-coverage premiums, were discharged by the release, it would receive a windfall never intended by the parties. See *Beauvoir*, 137 Ill. App. 3d at 304 (a general release of "all claims of any kind" did not release a claim for retaliatory discharge because Illinois courts refuse to interpret generalities to defeat a valid claim not then in the minds of the parties). We therefore restrict the language of the release to the persons intended to be released and refuse to interpret generalities to defeat a valid claim not then in the parties' minds. See *Thornwood, Inc.*, 344 Ill. App. 3d at 21; *Martin*, 318 Ill. App. 3d at 762; *Carlile*, 271 Ill. App. 3d at 839; *Gladinus*, 51 Ill. App. 3d at 696.

Accordingly, we decline to find that Kraemer, by executing an agreement intended to release Allstate and Teason from liability in excess of Allstate's $25,000 policy limit, released Farmers from its contractual obligation to pay underinsured-motorist-coverage benefits pursuant to the policy it issued to Kraemer. Accordingly, we affirm the circuit court's order entering a judgment in favor of Kraemer.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

7

Affirmed.


WELCH and McGLYNN, JJ., concur.

NO. 5-05-0447

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| FARMERS AUTOMOBILE INSURANCE ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05-MR-95 |
| LINDA S. KRAEMER, | ) ) | Honorable Richard A. Aguirre, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**: July 12, 2006

**Justices**:      Honorable Terrence J. Hopkins, J.

                   Honorable Thomas M. Welch, J.
                   Honorable Stephen P. McGlynn, J.
                   Concur

**Attorneys for Appellant**      Robert Marc Chemers, Anne E. Wall, Pretzel & Stouffer, Chartered, One South Wacker Drive, Suite 2500, Chicago, IL 60606

**Attorneys for Appellee**      Terry L. Peebles, 3944 Mississippi Avenue, P.O. Box 1677, Cahokia, IL 62206; Clyde L. Kuehn, The Kuehn Law Firm, 23 Public Square, Suite 450, Belleville, IL 62220